UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JULIO CESAR ACEVEDO CRUZ,

                              Petitioner,

v.

Jeremy CASEY, Warden at Imperial Regional Detention Facility; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; David J. VENTURELLA, Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; Todd BLANCHE, Attorney General of the United States, U.S. Department of Justice,

                              Respondents.

Case No.:  26cv4115-GPC(JLB)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

On July 17, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his unlawful detention at the Imperial Regional Detention Facility in Calexico, CA.  (Dkt. No. 1, Pet.)  Respondents filed a response on July 23, 2026.  (Dkt. No. 4.)  Petitioner filed a traverse on July 24, 2026.  (Dkt. No. 5.)  Based on the reasoning below, the Court GRANTS the petition for writ of habeas corpus.

/ / /

1

26cv4115-GPC(JLB)

**Discussion**

Petitioner is a native and citizen of Venezuela and entered the United States without inspection around November 19, 2022.  (Dkt. No. 1, Pet. ¶¶ 20, 26.)  Shortly after his entry, he was taken into immigration custody.  (*Id.* ¶ 27.)  About two days later, he was released and permitted to remain at liberty in the United States.  (*Id.* ¶¶ 4, 28.)  After his release, Petitioner affirmatively filed a Form I-589 application for asylum and withholding of removal.  (*Id.* ¶ 5.)  In connection with the asylum process, he submitted to government directed biometrics and fingerprints, security vetting and received employment authorization.  (*Id.* ¶¶ 3, 5.)  He openly resided in the United States for more than three and a half years without any claim he posed a danger to the community or was a flight risk. (*Id.* ¶ 6.)

After adjudicating his affirmative asylum application, USCIS referred the matter to the immigration court, and around April 27, 2026, DHS served him with a notice to appear commencing removal proceedings.  (*Id.* ¶ 30.)  He appeared at his removal proceeding hearing.  (*Id.* ¶ 31.)  Around June 26, 2026, Petitioner was walking on a street in Florida and was arrested by ICE officers and taken back into immigration custody.  (*Id.* ¶ 7.)  The ICE officers provided him with no notice, no individualized explanation and identified no changed circumstances justifying his re-detention.  (*Id.* ¶ 7.)  He was transferred through multiple detention facilities and arrived at the Imperial Regional Detention Facility in Calexico, CA where he remains detained.  (*Id.* ¶ 8.)  Petitioner alleges his detention violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. (*Id.* ¶¶ 51-62.)

In response to the order to show cause, Respondents mischaracterize Petitioner's argument stating that the legal issue presented concern whether Petitioner is subject to mandatory detention under 8 U.S.C. §§ 1225(b)(2)(A) or 1226(a).  (Dkt. No. 4 at 2.) Instead, Petitioner challenges the constitutionality of his re-detention without any meaningful pre-deprivation procedure and opportunity to respond.  (Dkt. No. 1, Pet.)

To the extent that Respondents do not engage with the due process arguments contained in the petition and do not oppose the Petition, the Court interprets this silence as a concession. *See e.g., Mikhailovskii v. Semaia et al.*, No. 5:26-CV-0960-DSR, 2026 WL 1196232, at *2 (C.D. Cal. Apr. 27, 2026) ("Respondents affirmatively stated in their Answer that they do not oppose the Petition, including Petitioner's due process claim. . . . Consistent with precedent, courts in this Circuit have regarded such silence as a concession."). Nonetheless, the Court addresses the constitutionality of Petitioner's detention.

Petitioner argues that his re-detention on June 26, 2026, after he had been briefly detained and released around November 2022 without any explanation or change in circumstance violates the Due Process Clause of the Fifth Amendment. (Dkt No. 1, Pet. at 2.)

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner, "even when ICE has the initial discretion to detain or release a noncitizen [  ], after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. United States Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D.

26cv4115-GPC(JLB)

Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros,* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) and *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

Here, because Petitioner was detained and then released from DHS custody, he maintained a protected liberty interest in remaining out of custody.

The Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481. "The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514, at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

As to the first *Mathews* factor, Petitioner has a significant private interest in his continued liberty. Thus, this factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12; *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not

provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, petitioner has not received any bond or custody hearing, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [her] detention." *Id.* (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner around November 2022, immigration officers determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034.

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). On the other hand, the costs of immigration detention are staggering. *Hernandez v. Session*, 872 F.3d 976, 996 (9th Cir. 2017). In sum, the Government's interest in detaining Petitioner without a hearing is low. *See Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite its own prior implicit determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent

danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15. In light of such a violation, Petitioner's release from custody is the appropriate remedy.[1] *See*, *e.g.*, *Quiroz v. Larose*, No. 26-CV-866 JLS (DEB), 2026 WL 673822, at *3 (S.D. Cal. Mar. 10, 2026); *Aliyev v. LaRose*, No. 3:26-CV-01119-CAB-JLB, 2026 WL 699818, at *3 (S.D. Cal. Mar. 12, 2026); *Devilmar v. LaRose*, No. 3:26-CV-01748-JES-MSB, 2026 WL 1042439, at *2 (S.D. Cal. Apr. 17, 2026); *Perez*, 2026 WL 102643, at *2.

Accordingly, IT IS HEREBY ORDERED that

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

2. Because the government has no evidence that Petitioner poses a flight risk or danger to the community, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody under the same conditions that existed immediately prior to his re-detention.

3. Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.

4. The Clerk of Court SHALL enter judgment in Petitioner's favor and close this case.

/ / /

/ / /

---

[1] Having reached this conclusion on Petitioner's due process claims, the Court declines to reach the merits of Petitioner's Administrative Procedure Act claim

26cv4115-GPC(JLB)

5.  The hearing set for July 31, 2026 shall be **vacated**.

IT IS SO ORDERED.

Dated:  July 27, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26cv4115-GPC(JLB)